IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CR  10-130-JAP |
| ) | CV  14-720 JAP/CG |
| **CARL EMANUEL HAESE,** ) | |
| ) | |
| **Defendant.** ) | |

### UNITED STATES' RESPONSE TO DEFENDANT/MOVANT'S MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE UNDER 28 U.S.C. § 2255.

The United States hereby responds to the defendant/movant's Motion to Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed on August 15, 2014, CR Doc. 77, CV Doc. 1.[1] For the reasons stated below, the United States submits that the defendant's motion should be dismissed with prejudice and without a hearing because it was not filed within the time period allowed by 28 U.S.C. § 2255(f). If the Court finds that the defendant's § 2255 motion is timely, the United States respectfully requests the Court to set this matter for a hearing.

### STATEMENT OF THE CASE

On January 15, 2010, a one-count information was filed in United States District Court, District of New Mexico, charging the defendant, Carl Emanuel Haese, with Wire Fraud, in violation of 18 U.S.C. § 1343. CR Doc. 23. The offense that the defendant pled guilty to occurred on or about October 15, 2008, in Doña Ana County, New Mexico. CR Doc. 26.

---

[1] Citations to "CR Doc. __" refer to the number of the document on the District Court's docket sheet for the defendant's criminal case, 10-CR-130 JAP. Citations to "CV Doc. __" refer to the number of the document on the District Court's docket sheet for the defendant's civil case, 14-CV-720 JAP/CG.

On January 15, 2010, the defendant pled guilty to the information with the benefit of a plea agreement, pursuant to Rule 11(c)(1)(B) of the Federal Rule of Criminal Procedure. CR Docs. 26 & 27.

Pursuant to the plea agreement, the United States agreed to recommend that the defendant receive a 3-level reduction for acceptance of responsibility. The defendant agreed to waive "the right to appeal this conviction and/or any sentence within the statutory maximum authorized by law. In addition, the defendant agreed to waive any collateral attack to this conviction and/or sentence pursuant to 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel." CR Doc. 26 at 5-6, Ex. 1 at 5-6.[2] The plea agreement also stipulated that the defendant would receive an eight level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(E) and a two level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(A). *Id*. at 4-5. The plea agreement also stipulated that the defendant pay a fine in the amount of $10,000 and that the defendant pay full restitution to all victims of his wire fraud scheme in an amount to be determined at sentencing. *Id.*

At the hearing for the defendant's change of plea, the Court went over the terms of the plea agreement with the defendant. Ex. 2 at 11-12.[3] Those terms included the waiver of appeal and collateral attack. *Id.* at 11. The Court questioned the defendant about the terms of the plea agreement to make certain that the defendant understood his waiver of appeal and collateral attack, as contained in the plea agreement. *Id.* at 11-12.

The United States Probation Office calculated the defendant's Base Offense Level at 7. PSR ¶ 49.[4] The defendant's offense level was increased by 8 levels because of a stipulation by

---

[2] Citations to "Ex. __ at __" refer to the exhibits attached to this Response Brief. Exhibit 1 is the defendant's plea agreement.
[3] Exhibit 2 is the defendant's plea hearing transcript.
[4] Citations to "PSR ¶ __" refer to the presentence report prepared in the defendant's criminal case.

2

the parties concerning the amount of loss to the victims. PSR ¶ 50. The offense level was increased by two levels because of a stipulation by the parties concerning the number of victims. PSR ¶ 51. The offense level was increased by two levels because a victim of the offense was a vulnerable victim. PSR ¶ 52. The offense level was increased by two levels because the defendant abused a position of trust. PSR ¶ 53. After the 3-level reduction for acceptance of responsibility, the defendant's Total Offense Level was 20. PSR ¶ 57. The defendant's total criminal history score was zero, establishing a Criminal History Category of I. PSR ¶ 67. Based on a Total Offense Level of 20 and Criminal History Category of I, the defendant's guideline range was 27 to 33 months imprisonment. PSR ¶ 95.[5]

On March 22, 2012, the Honorable District Court Judge James A. Parker sentenced the defendant to 27 months imprisonment and restitution in the amount of $164, 522.53. CR Docs. 62, 70; Ex. 3 at 54, 56.[6] The defendant was allowed to voluntarily surrender. The defendant was represented by defense counsel, Mr. Jess Lilley.

On April 3, 2012, the Court entered the Judgment as to the defendant. CR Doc. 64.

On June 29, 2012, the Court entered an Amended Judgment as to the defendant modifying the amount of restitution. CR Doc. 70.

On May 8, 2012, the defendant filed a Motion to Continue Surrender Date and requested the Court to continue the surrender date until August 16, 2012 because of an infection to the defendant's right foot caused by a diabetic ulcer. CR Doc. 65.

On May 9, 2012, the Court granted the motion and continued the defendant's surrender date until August 16, 2012. CR. Doc. 66.

On July 26, 2012, the defendant filed a Motion to Continue August 16th Surrender Date

---

[5] The PSR also increased the defendant's offense level two levels because the defendant obstructed or impeded justice, PSR ¶ 54; however, the United States did not pursue that enhancement.
[6] Exhibit 3 is the defendant's sentencing hearing transcript.

until December 1, 2012 so that the defendant could receive further treatment to his improving foot. CR Doc. 71 at 1-2.

On August 3, 2012, the Court granted the motion and continued the defendant's surrender date until December 1, 2012. CR Doc. 72.

On November 16, 2013, the defendant filed a Motion to Continue December 1, 2012 Surrender Date to April 1, 2013 in order to complete the treatment on his foot. CR Doc. 73.

On November 26, 2013, the Court granted the motion and continued the defendant's surrender date until April 1, 2013. CR Doc. 74.

On March 26, 2013, the defendant filed a Motion to Continue April 1, 2013 Surrender Date until July 15, 2013 because of complications related to his diabetes and high blood pressure. CR Doc. 75 at 2.

On March 28, 2013, the Court granted the motion and continued the defendant's surrender date until July 15, 2013. CR Doc. 76.

The defendant surrendered to BOP custody on July 15, 2013.

The defendant is scheduled to be released from BOP custody on June 29, 2015.

On August 15, 2014, the defendant filed a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. CR Doc. 77, CV Doc. 1. In his motion, the defendant alleges one claim summarized as follows:

> Claim One: His attorney was ineffective because his attorney failed to file a timely notice of appeal after the defendant requested him to do so.

On February 10, 2015, the Court issued an Order to Show Cause to the defendant to show cause why his § 2255 motion should not be dismissed as untimely. CR Doc. 78, CV Doc. 3.

On March 9, 2015, the defendant filed his Response to the Order to Show Cause. CR Doc. 79, CV Doc. 4.

On March 16, 2015, the Court ordered the United States to respond to the defendant's motion on or before April 8, 2015. CR Doc. 80, CV Doc. 5.

On March 17, 2015, the United States filed a 60-day extension of time to respond to the defendant's § 2255 motion. CR Doc. 81, CV Doc. 6.

On March 18, 2015, the Court granted the extension and ordered the United States to respond on or before June 8, 2014. CR Doc. 82, CV Doc. 7.

## **STATEMENT OF THE FACTS**

On January 20, 2009, Todd Stockton contacted the United States Food and Drug Administration (FDA) to complain about medical treatment that he received from the defendant at the Haese Clinic of Integrative Medicine, Las Cruces, New Mexico. PSR ¶ 6.

Stockton explained that he had been suffering from Lyme disease for the past five years and that he read an internet blog that there was a doctor in the southwest that had treated over 3,000 Lyme disease patients with a 100% cure rate. PSR ¶ 7. Stockton learned that the doctor referenced was the defendant. *Id*.

Stockton advised that in October 2008, he spoke to the defendant on the telephone and that the defendant told him that he was a medical doctor, a naturopathic doctor, and a hematologist and that his Lyme disease treatment consisted of multiple IV solutions administered over a period of seven to nine days. PSR ¶ 8. The defendant told Stockton that the seven day protocol costs $5,000 and the nine day protocol costs $6,000. *Id.*

On October 31, 2008, Stockton visited the defendant at his clinic to undergo the Lyme disease treatment. PSR ¶ 9. The defendant told Stockton that Stockton had to pay for the

treatment prior to administering it, so Stockton provided two credit cards. *Id.* The clinic receptionist advised Stockton that the clinic's credit card machine was not working and that she would keep Stockton's credit cards and run the charges the next day. *Id.*

Stockton met with the defendant prior to undergoing the Lyme disease treatment and asked the defendant to validate his medical degrees and training as a doctor, and the defendant told him that his training and degrees were confidential. PSR ¶ 10. The defendant gave Stockton a business card that identified himself as "Sir Carl Haese, Knight of Honor." *Id.* The defendant further stated that he was immune from all state and government medical licensing. *Id.* The defendant told Stockton that he received part of his medical training from Dr. Robert Bradford who developed the Bradford Variable Projection High Resolution Microscope. *Id.*

The defendant performed an analysis of Stockton's blood under the Bradford Variable Projection High Resolution Microscope and told him that he had Lyme disease. PSR ¶ 11. Stockton noted that the defendant failed to take any notes during the analysis, but was reassured because two of defendant's nurses advised Stockton that the defendant had a 100% cure rate for treating Lyme disease. *Id.*

Stockton opted for the nine day Lyme disease treatment protocol. PSR ¶ 12. The defendant told him that the treatment consisted of multiple IV infusions containing Dioxychor and Sulfoxamine. *Id.* The defendant's nurse administered the first treatment to Stockton at the defendant's clinic. *Id.* That evening, Stockton began urinating blood and felt the condition was a direct result of the Lyme disease treatment he received from the defendant. *Id.* The next day, he returned to the clinic for his second round of treatment and reported his symptoms to the defendant. *Id.* Stockton further questioned the defendant about his medical training and experience, and the defendant became infuriated. *Id.* The defendant told Stockton that he was

not a suitable patient and told him to leave the clinic. *Id.* Stockton asked for a refund, but the defendant refused. *Id.* Stockton asked for his credit cards, but only got one of them returned to him. *Id.* The defendant charged Stockton the full amount of the nine-day Lyme disease treatment protocol. *Id.* The credit card charges were made with a Visa credit card and the transaction traveled in interstate commerce.

     On April 9, 2009, the FDA executed a federal search warrant at the defendant's clinic. PSR ¶ 17. The defendant told agents that he was the sole owner of the clinic and responsible for the clinic's daily operations. *Id.* The defendant said that his father, Wolfgang Haese, was a licensed medical doctor in New Mexico and owned and operated the clinic until his death in July 2008. *Id.* The defendant said that after his father died, he decided to keep the clinic open by hiring another medical doctor to treat patients. *Id.*

     The defendant stated that he was a naturopathic doctor and acknowledged that his medical degrees were not recognized by New Mexico or any other United States-based medical boards as valid medical degrees. *Id.* The defendant stated that he completed the majority of his training through intent courses and seminars, and added that he completed the course in approximately one year. PSR ¶ 18. The defendant also stated that only eight patients had been treated for Lyme disease at this clinic since 2008. PSR ¶ 21.

     The investigation identified thirty-two Lyme disease patients that the defendant treated at his clinic in Las Cruces. PSR ¶ 42. During those treatments, the defendant fraudulently claimed that he successfully treated over 3,000 patients with Lyme disease over the past ten years with a 100% success rate. *Id.* Those fraudulent assurances convinced the patients to pay for the treatment. *Id.* The majority of the victims paid between $5,000 and $6,000 for the treatment for either the seven or nine day treatment protocol. *Id.*

**ARGUMENT**

    1.  THE DEFENDANT'S § 2255 MOTION IS UNTIMELY AND SHOULD BE DISMISSED.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2255 by adding a time-limit provision for Section 2255 motions. As a result of AEDPA, a §2255 motion must be filed within one year, which runs from the latest of:

1) the date on which the judgment of conviction becomes final;

2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In this case, the Clerk entered the Judgment on April 3, 2012 (CR Doc. 64) and the Amended Judgment modifying restitution on June 29, 2012 (CR Doc. 70). The defendant did not directly appeal his conviction or sentence. Thus, the defendant's conviction became "final upon the expiration of the time in which to take a direct criminal appeal." *United States v. Prows,* 448 F.3d 1223, 1227-28 (10th Cir. 2006). Under Rule 4(b) of the Federal Rules of Appellate Procedure, the defendant's judgment became final, at the latest, July 13, 2012, 14 days after entry of the Amended Judgment. Therefore, the defendant had until July 15, 2013 to file a motion to vacate under 28 U.S.C. § 2255. As such, the defendant's § 2255 motion, which was filed on August 15, 2014, is untimely based on the date of the final judgment of conviction. Neither the defendant's § 2255 motion nor his Response to the Court's Order to Show Cause present facts which justify equitably tolling the limitation period.

The defendant is time-barred from filing his § 2255 motion absent a justification for equitable tolling of the one-year limitation period. The Supreme Court has held that AEDPA's statutory limitation period is subject to equitable tolling "in appropriate cases." *See Holland v. Florida,* 130 S. Ct. 2549, 2560 (2010). Equitable tolling is warranted, however, only "in rare and exceptional circumstances." *Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir. 2000) (quoting *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)) (internal quotation marks omitted).

Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Yang v. Archuleta,* 525 F.3d 925, 930 (10th Cir. 2008) (quoting *Lawrence v. Florida,* 549 U.S. 327, 336 (2007)). Extraordinary circumstances that warrant equitable tolling of the limitations period may include "a constitutional violation [that] has resulted in the conviction of one who is actually innocent or incompetent." *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998), *cert. denied,* 525 U.S. 891 (1998).

A showing of excusable neglect is not sufficient to justify equitable tolling. *See Gibson,* 232 F.3d at 808. Furthermore, in order to demonstrate he pursued his claims diligently, the defendant must "allege with specificity the steps he took to diligently pursue his federal claims." *Yang,* 525 F.3d at 930 (citing *Miller,* 141 F.3d at 978) (internal quotation marks omitted). The defendant bears the burden of demonstrating that equitable tolling is appropriate in this action. *See id.*

Here, the defendant does not contend that he is actually innocent of the crimes for which he was convicted nor does he set forth the steps he took to diligently pursue his § 2255 claim. In his Response to the Court's Order to show cause, the defendant claims that he failed to timely file his § 2255 motion because of poor health. More specifically, the defendant claims that

shortly after he was sentenced, he was admitted to the hospital for nine days and underwent surgery to his right foot. CR. Doc. 79 at 1.

After the defendant's release from the hospital, he went home and received intravenous therapy while attached to a wound-care pump. *Id.* When the defendant self-surrendered (on July 15, 2013), he was diagnosed with renal kidney failure. *Id.* After several months of testing and treatment, doctors surgically inserted a peritoneal catheter. *Id.* In June 2014, the defendant began peritoneal dialysis. *Id.* The defendant claims that after he was placed on dialysis, his symptoms "settled down" and he was fit to file his § 2255 motion. *Id.* These reasons do not justify equitable tolling of the one-year limitation period. The Tenth Circuit has consistently found equitable tolling not appropriate, absent truly extraordinary circumstances, even in cases involving inmates with medical conditions or mental handicaps. *See Garza v. Kansas*, 449 F.App'x 734 (10th Cir. 2011) (unpublished) (equitable tolling inappropriate where defendant made reference to his medical history but otherwise did not explain "his multiple year delay in seeking federal relief"); *United States v. Bukcaloo*, 257 F.App'x 88, 89-90 (10th Cir. 2007) (unpublished).

Here, the defendant's health problems were not extraordinary. In fact, on July 26, 2012 — 13 days after the Amended Judgment became final — the defendant wrote in his Motion to Continue August 16th Surrender Date that his foot is improving. CR Doc. 71 at 1. On November 16, 2012, the defendant wrote in his Motion to Continue December 1, 2012 Surrender date that his recovery had gone well over the last few months and that the wound on his foot is healing. CR Doc. 73 at 1. On March 26, 2013, the defendant wrote in his Motion to Continue April 1, 2013 Surrender Date that he had completed therapy on his foot and that the foot had healed fairly well. CR Doc. 75 at 1.

The defendant did complain that he had other medical problems, to include neuropathy

related to disc herniations and eye and kidney problems related to diabetes and that his diabetes and high blood pressure were "uncontrolled," but those medical conditions are not extraordinary. In any event, by that time, the defendant was eight months into the one-year statutory limitation period for filing his § 2255 claim an apparently had not yet begun pursuing his § 2255 claim. Likewise, in the defendant's response to the Court's Order to Show Cause, the defendant argues that he suffered renal kidney failure after he self-surrendered to the La Tuna Federal Correctional Institution (La Tuna), but the defendant reported to La Tuna on July 15, 2013 — the last day of the one-year limitation period for filing his § 2255 motion. Any medical problems the defendant suffered after he self-surrendered to BOP custody were after the one-year statutory period for filing his § 2255 claim. For all of the above-stated reasons, the defendant's § 2255 claim should be dismissed as untimely, with prejudice, and without a hearing. Even if the Court finds that the defendant's § 2255 claim is timely, the Court should dismiss it because the defense attorney, Jess Lilley, was not ineffective because the defendant did not ask Mr. Lilley to appeal his sentence.

2. DEFENSE COUNSEL WAS NOT INEFFECTIVE IN FAILING TO TIMELY FILE A NOTICE OF APPEAL.

An ineffective assistance of counsel claim requires a showing that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To show that his counsel was constitutionally deficient, a defendant "must show that his counsel's representation fell below an objective standard of reasonableness." *Miles v. Dorsey,* 61 F.3d 1459, 1474 (10th Cir. 1995) (quoting *Strickland,* 466 U.S. at 688). Under *Strickland,* a defendant must show that his counsel's "identified acts or omissions were outside the range of professionally competent assistance." *Strickland,* 466 U.S. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment." *Id.* To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When claiming ineffective assistance of counsel, it is not enough to make conclusory arguments or vague descriptions of the claimed deficient performance. *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994). Tested against these standards, the defendant's motion wholly fails to set out any basis for relief.

The defendant argues that defense counsel "did not file an appeal after I ask[ed] him to[.] [T]he Plaintiff ask[ed] his counsel to appeal the enhancements that he received that [were] not part of the plea agreement." CR Doc. 77 at 3, CV Doc. 1 at 3. No factual basis exists for this claim.

Defense counsel, an experienced defense attorney, did not take a direct appeal. However, the defendant does not provide any factual support nor does he cite to any evidence to establish that he even requested an appeal. *Fisher,* 38 F.3d at 1147. Defense counsel, without request from the defendant, had no reason to believe that the defendant had wanted an appeal because when he agreed to plead guilty pursuant to the 11(c)(1)(B) plea agreement, the defendant agreed to waive his right to appeal. *See* Ex. 1 at 5-6. Indeed, defense counsel attests in his affidavit the defendant never told him that he wanted to appeal his sentence. Ex. 4.[7]

Although the Court must liberally construe the defendant's *pro se* petition, the Court is not "required to fashion the defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *Id.* The defendant's after-the-fact declaration concerning defense counsel's failure to file an appeal, without more, is insufficient to establish that his counsel's representation fell below an objective standard of

---

[7] Exhibit 4 is a sworn affidavit from defense counsel, Jess Lilley.

reasonableness or that the outcome of the proceedings would have been different. Thus, without specific and detailed factual support to back up his allegation, the defendant's claim is vague, conclusory and wholly incredible. Therefore, the defendant's claim must be dismissed.

## STATEMENT ON EVIDENTIARY HEARING

If the Court finds that the defendant's § 2255 claim is untimely, then no evidentiary hearing is needed and the Court should dismiss the defendant's claim with prejudice. However, if the Court finds that the defendant's § 2255 claim is timely, it appears that an evidentiary hearing is required. *See United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007) (remanding case for a hearing to determine whether the defendant requested counsel to file a notice of appeal); *United States v. Garrett*, 402 F.3d 1262, 1266 (10th Cir. 2005) (same); *see also United States v. Lee-Speight*, 529 F.App'x 903 (10th Cir. 2013) (same).

## CONCLUSION

WHEREFORE, the United States respectfully requests the Court to find that the defendant's § 2255 claim is untimely and to dismiss it with prejudice, or, if the Court finds that the defendant's § 2255 claim is timely, to set this matter for a hearing.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*Electronically Filed on 6/8/2015*
MARK A. SALTMAN
Assistant United States Attorney
555 S. Telshor Blvd., Suite 300
Las Cruces, New Mexico 88011
Phone: (575) 522-2304
Fax: (575) 522-2391

CERTIFICATION OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and mailed a copy of the foregoing on this <u>8th</u> day of June, 2015 to the Defendant/Petitioner at the following address which is the address that appears on his Response to the Court's Order to Show Cause:

                Carl Emanuel Haese
                Medical Center for Federal Prisoners
                Post Office Box 4000
                Springfield, Missouri 65801-4000

                              /s/
                MARK A. SALTMAN
                Assistant United States Attorney